T.J. MAXX, Appellant

v.

Christine L. BLAGG; Honorable John B. Coleman, Administrative Law Judge; and Worker's Compensation Board, Appellees.

No. 2007–SC–000939–WC.

Supreme Court of Kentucky.

Dec. 18, 2008.

Lyn Douglas Powers, Fulton & Devlin, Louisville, KY, Counsel for Appellant, T.J. Maxx.

Michael C. Arnold, Crestview Hills, KY, Counsel for Appellee, Christine L. Blagg.

## OPINION OF THE COURT

The Workers' Compensation Board vacated the opinion and order that dismissed this claim on the ground that the Administrative Law Judge (ALJ) relied on an invalid university evaluation. The Court of Appeals affirmed. Appealing, the employer argues: 1.) that the ALJ erred by ordering an evaluation after the claim was submitted for a decision; and 2.) that the Board usurped the ALJ's function by finding Dr. Goldman not to be a valid university evaluator. We reverse and remand for further proceedings. KRS 342.315 permits a university evaluation whenever a medical question is at issue but evinces no intent to depart from the regulations that govern the taking of proof. The ALJ erred by ordering a university evaluation after taking the claim under submission rather than deciding it based on the evidence of record at that time.

The claimant was born in 1966 and began working for the defendant-employer in 1993. Her job required her to unload incoming stock and to help re-stock the store. She alleged that she sustained a work-related back injury on October 9, 2002, while unloading boxes from a conveyor belt and that the injury produced a psychiatric condition. Among other things, the contested issues included causation, whether she sustained an injury as defined by KRS 342.0011(1), and the ex-

tent and duration of disability. The parties submitted extensive lay and medical evidence, submitted witness lists, and participated in a benefit review conference.

After a hearing and briefing, the ALJ took the claim under submission. Sometime thereafter, the ALJ entered an order holding the matter in abeyance and directing the claimant to undergo a university evaluation. The order explained that the evidence was "in great conflict" concerning whether the claimant suffered an injury as defined by KRS 342.0011(1) and whether it produced a severe disability or no disability; thus, "an error in judgment on this claim would be a big one." The employer petitioned for reconsideration, objecting and arguing that the need for another medical opinion after the claim was taken under submission showed that the claimant failed to meet her burden of proof. The claimant responded that the evaluation would assist the ALJ and also requested a university evaluation concerning her psychiatric complaints. Objecting to the request, the employer pointed out that she could have done so during normal proof time but did not. The ALJ denied the employer's petition and deferred a decision on the claimant's motion pending the evaluation of the physical complaints.

The University of Louisville selected Dr. Goldman of the Medical Assessment Clinic to perform the evaluation. A letter from the Department of Workers' Claims informed the claimant of the time and place of the evaluation and indicated that "maps of the examination site within the university facility" were enclosed. The claimant underwent the evaluation, after which Dr. Goldman submitted a Form 107 report that was unfavorable to the claim. He concluded that she did not sustain a work-related injury on October 9, 2002, noting that she performed the same work that she had been performing for 19 years and

that nothing unusual happened on that day. He also noted that her complaints "far exceed the objective verification on this examination" and assigned a 0% permanent impairment rating.

The claimant moved to strike Dr. Goldman's report, asserting that it was confusing, self-contradictory, and difficult to understand. Although the Form 107 listed the purpose of the examination as being a university evaluation, she seized on a statement in the accompanying narrative, which indicated that the report would be "sent to the referring client who is unknown to this examiner." On that basis, she asserted that Dr. Goldman seemed to be unaware that the evaluation was requested under KRS 342.315. She also moved to hold the claim in abeyance and/or for an extension of proof time, asserting that the evaluation did not occur at a medical school and that her attorney needed time to investigate. The employer objected to the motions.

Noting that the claimant's objections to Dr. Goldman's report affected its weight rather than its admissibility, the ALJ denied the motion to strike it. The ALJ also denied the motion for a university psychiatric evaluation and ordered the claim to be re-submitted. Relying on Dr. Goldman's report, the ALJ dismissed the claim for permanent income and medical benefits. After expressing agreement with Dr. Goldman's opinion that no good history indicated an injury actually occurred, the ALJ stated, "In this instance, the [ALJ's] initial feelings were confirmed by the university evaluator's finding that the plaintiff had not sustained a permanent injury . . . ."

Appealing to the Board, the claimant argued that the ALJ erred by concluding that her symptoms resulted from longstanding, pre-existing psychiatric problems rather than a work-related injury. She also argued that Dr. Goldman's report was

inadmissible as a university evaluation under KRS 342.315. The employer responded that the claimant failed to meet her burden of proving that her complaints resulted from a work-related injury and that substantial evidence supported the ALJ's decision. In a cross-appeal, the employer argued that the ALJ erred as a matter of law by failing to decide the claim based on the evidence of record when it was submitted; that the claimant failed to meet her burden of proof; and that appointing a university evaluator after the claim was submitted constituted an abuse of the ALJ's discretion.

The Board found no error in the decision to order a university evaluation in a situation where an ALJ found the medical evidence to be too disparate to reach a just outcome. It also determined from Office of Workers' Claims records that the medical qualifications form for Dr. Goldman indicated that he was employed by the Medical Assessment Clinic. Relying on *Morrison v. Home Depot*, 197 S.W.3d 531 (Ky.2006), the Board determined that the claim must be remanded for a decision that excluded his opinions. The Board found it appropriate under the circumstances for the ALJ to reopen proof time for both of the parties, order a second university evaluation, or both. The court explained in *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 95–98 (Ky.2000), that the purpose of KRS 342.315 is to provide ALJs with clinical findings and opinions from unbiased medical experts and to assure sufficient numbers of such experts. In *Morrison v. Home Depot, supra*, the ALJ ordered a university evaluation within normal proof time. The University of Louisville assigned the matter to Dr. Goldman, who examined Morrison at the Medical Assessment Clinic and submitted clinical findings and opinions. Although Morrison moved to strike the report as inadmissible on the ground that Dr. Goldman was not a university employee, the ALJ overruled the motion based on the plain language of the statute and Morrison appealed. The court relied on *Magic Coal Co. v. Fox, supra*, and determined that KRS 342.315 does not authorize the university medical schools to subcontract evaluations to private physicians and that a physician who is not " 'affiliated with', *i.e.*, employed by or on the staff of one of the designated medical schools" is not a proper evaluator. Thus, a report from such a physician is not admissible for the purposes of KRS 342.315. The court remanded the claim for further proceedings, in other words, for the ALJ to determine whether Dr. Goldman was affiliated with the University of Louisville medical school when he performed the evaluation. The fact that a physician is employed by a private clinic does not necessarily preclude a finding that the physician is also affiliated with a university.

Although KRS 342.315 permits a referral for a university evaluation whenever a medical question is at issue, it evinces no intent to depart from the regulations that govern the taking of proof. The regulations afford ALJs considerable latitude to control the taking of proof, but do not allow unfettered discretion to do so. They anticipate that proof will be complete before the benefit review conference. The applicable version of 803 KAR 25:010, § 13(10) requires the parties' witness lists to be submitted at least 10 days before the benefit review conference and requires a summary of each witness's anticipated testimony. For medical witnesses, the summary must include the diagnosis, the clinical findings and diagnostic studies that form the basis for the diagnosis, and any functional impairment rating or work-related restrictions that the witness assigned. Although 803 KAR 25:010, § 13(15) permits an ALJ to order addition-

al discovery or proof between the benefit review conference and the hearing upon motion with good cause shown, no regulation anticipates that additional proof will be taken after a claim has been heard, briefed and taken under submission.

Causation and the extent of disability were hotly-contested issues in this claim. The ALJ extended the normal period for taking proof and permitted the parties to submit medical evidence from more than two physicians.[1] The parties submitted their proof and witness lists; they participated in a benefit review conference; and the claim was heard, briefed, and submitted for a decision before the ALJ requested a university evaluation. We are not convinced that the disparity in the parties' evidence warranted reopening proof at that point. The ALJ abused his discretion in doing so and should have been reversed on appeal.

The decision of the Court of Appeals is reversed. This claim is remanded to the ALJ to be decided on the basis of the evidence of record on March 23, 2005, when it was submitted.

All sitting. All concur.

---

1. 803 KAR 25:010, § 10(1) limits a party to direct medical testimony from two physicians except upon a showing of good cause and prior approval by an ALJ.